**CR-12 0632**

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.

★   OCT 02 2012   ★

LONG ISLAND OFFICE

DMJ:TMS
F.#2010R01022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MELVIN CWIBEKER,
    also known as "Mel Cwibeker,"
RICHARD HURWITZ,
SHIMON METZ and
MARK SAMUEL,

          Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

SEYBERT, J

BOYLE, M

Cr. No. _____
(T. 18, U.S.C., §§
981(a)(1)(C), 982(a)(1),
982(a)(7), 982(b)(1),
1028A(a)(1), 1028A(b),
1028A(c)(5), 1349, 1516,
1956(a)(1)(A)(i),
1957(a), 1957(b),
1957(d)(1), 2 and 3551 et
seq.; T. 21, U.S.C., §
853(p))

THE GRAND JURY CHARGES:

INTRODUCTION TO ALL COUNTS

At all times relevant to this Indictment, unless otherwise stated:

I.    Background

    A.    The Medicare Program

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to individuals aged 65 and over and to certain disabled persons.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."  The physician who

provided a service to a beneficiary or ordered that a service be provided to a beneficiary was referred to as a "rendering physician."

    2.    Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

    3.    Medicare included coverage under several components, including hospital insurance ("Part A") and medical insurance ("Part B"). Medicare Part B covered the costs of physicians' services and outpatient care, including physical therapy and diagnostic tests. Medicare Part B covered these costs only if, among other requirements, they were medically necessary and ordered by a physician.

    4.    A medical provider certified to participate in Medicare, whether a clinic or an individual, was assigned a provider identification number ("PIN") for billing purposes. A medical provider rendering a service was required to use its assigned PIN when submitting a claim for reimbursement to Medicare.

    5.    A medical provider was permitted to submit claims to Medicare only for services actually rendered and was required to maintain patient records verifying the provision of services. A medical provider was required to maintain patient records either at the business address indicated on his Medicare application, or at location where medical services were provided.

2

6.   To receive reimbursement for a covered service from Medicare, a medical provider was required to submit a claim, either electronically or in writing.  The claim had to include information identifying the medical provider, the rendering physician, the patient and the services rendered.  By submitting the claim, the provider was certifying, among other things, that the services were rendered to the patient and were medically necessary.

7.   Medicare provider claims included "billing codes," which were numbers that referred to specific descriptions of medical services.  Medicare reimbursed medical providers a set fee for many billing codes.  One type of service covered by Medicare was chiropractic, a health care profession that focused on disorders of the musculoskeletal system and the nervous system, and the effects of these disorders on general health.

B.   Relevant Entities and the Defendants

(1)   The Assisted Living Facilities

8.   An Assisted Living Facility ("ALF") was a facility that provided a structured, supervised living environment for individuals who could no longer care for themselves, and had no other means to provide necessary care themselves.  An ALF provided 24-hour monitoring of its residents.  Many ALFs arranged for medical professionals to come to the ALF to facilitate the treatment and well-being of its residents.

3

(2)   The Defendants

9.   The defendant MELVIN CWIBEKER, also known as "Mel
Cwibeker," was the owner of Mel Cwibeker D.C., located in
Woodmere, New York.  CWIBEKER was also a chiropractor licensed by
New York State who rendered chiropractic services to residents at
nineteen ALFs located in Bronx, Brooklyn, Westchester, Queens and
Richmond counties.  CWIBEKER was the sole authorized signatory on
a corporate Bank of America account located in Lawrence, New York
entitled "Mel Cwibeker D.C." (the "Mel Cwibeker account") that
was designated to receive Medicare reimbursement funds for
services rendered.  Bank of America was a financial institution
that insured its corporate bank accounts with the Federal Deposit
Insurance Corporation.

10.   Defendants RICHARD HURWITZ, SHIMON METZ and MARK
SAMUEL were chiropractors licensed to practice in New York State.

II.   The Fraudulent Scheme

11.   From approximately January 2006 to March 2012, the
defendants MELVIN CWIBEKER, RICHARD HURWITZ, SHIMON METZ and MARK
SAMUEL, together with others, agreed to execute and executed a
fraudulent scheme in which they submitted, and caused to be
submitted, to Medicare fraudulent Medicare claims that falsely
reflected that CWIBEKER, HURWITZ, METZ and SAMUEL had provided

4

chiropractic services to residents of ALFs, which services were eligible for Medicare payment.

12.   The defendant MELVIN CWIBEKER visited various ALFs, purportedly to provide Medicare reimbursable chiropractic services to ALF residents.  CWIBEKER also hired the defendants RICHARD HURWITZ, SHIMON METZ and MARK SAMUEL to visit ALFs chosen by CWIBEKER within the Eastern District of New York and elsewhere, purportedly to provide Medicare reimbursable chiropractic services to ALF residents.  In reality, CWIBEKER, HURWITZ, METZ and SAMUEL did not provide any Medicare reimbursable chiropractic services to any ALF residents.

13.   After HURWITZ, METZ or SAMUEL visited an ALF, they would transmit a list, by facsimile or other electronic means, of ALF residents purportedly seen by them to CWIBEKER.  CWIBEKER then caused the submission of false and fraudulent claims to Medicare that sought reimbursement for services which CWIBEKER, HURWITZ, METZ and SAMUEL then and there well knew had not been performed.

14.   In or about October 2010, CWIBEKER received written notification from CMS that CMS was conducting an audit of CWIBEKER's chiropractic practice.  This audit required CWIBEKER to submit documentation to support prior requests for Medicare reimbursement.  In or about and between October 2010 and June 2011, in response to CMS's request for documentation, CWIBEKER

5

prepared, and caused to be prepared, fictitious patient records of Medicare reimbursable chiropractic treatment.  CWIBEKER then submitted, and caused to be submitted, these fictitious patient records to CMS, to substantiate his requests for Medicare reimbursement.

15.  CWIBEKER thereafter wrote checks and caused wire transfers to be made from the Mel Cwibeker D.C. account to HURWITZ, METZ and SAMUEL as payment for chiropractic services purportedly rendered.  As the owner of Mel Cwibeker D.C., CWIBEKER also conducted financial transactions from the Mel Cwibeker D.C. account, including the payment of salaries to HURWITZ, METZ and SAMUEL, and CWIBEKER's personal expenses.

16.  In furtherance of this fraudulent scheme, CWIBEKER, HURWITZ, METZ and SAMUEL submitted and caused to be submitted more than $6.4 million in materially false and fraudulent claims to Medicare.  These claims were materially false and fraudulent because CWIBEKER, HURWITZ, METZ and SAMUEL submitted, and caused to be submitted, claims to Medicare for Medicare reimbursable chiropractic services, when no such services were provided.

17.  In submitting, and causing to be submitted, these fraudulent claims to Medicare, CWIBEKER, HURWITZ, METZ and SAMUEL provided Medicare with ALF patients' means of identification, including, but not limited to, the patient's name, date of birth,

6

PIN and Social Security Number, all of which information was required by Medicare to appear on documentation seeking Medicare reimbursement.  Medicare reimbursed approximately $4 million of these false and fictitious claims, none of which CWIBEKER, HURWITZ, METZ and SAMUEL were lawfully entitled to receive.

<u>COUNT ONE</u>
(Conspiracy to Commit Health Care Fraud)

18.  The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

19.  In or about and between January 2006 and March 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MELVIN CWIBEKER, also known as "Mel Cwibeker," RICHARD HURWITZ, SHIMON METZ and MARK SAMUEL, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud Medicare, a health care benefit program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 <u>et</u> <u>seq</u>.)

7

COUNT TWO
(Aggravated Identity Theft)

20.   The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

21.   On or about November 6, 2009, within the Eastern District of New York and elsewhere, the defendant MELVIN CWIBEKER, also known as "Mel Cwibeker," together with others, during and in relation to the crime charged in Count One, did knowingly and intentionally transfer, possess and use, without lawful authority, means of identification of another person, to wit: Jane Doe #1, an individual whose identity is known to the Grand Jury, knowing that the means of identification belonged to another person.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.)

COUNT THREE
(Aggravated Identity Theft)

22.   The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

23.   On or about September 8, 2010, within the Eastern District of New York and elsewhere, the defendant RICHARD HURWITZ, together with others, during and in relation to the crime charged in Count One, did knowingly and intentionally

8

transfer, possess and use, without lawful authority, means of identification of another person, to wit: Jane Doe #2, an individual whose identity is known to the Grand Jury, knowing that the means of identification belonged to another person.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.)

COUNT FOUR
(Aggravated Identity Theft)

24. The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

25. On or about September 25, 2008, within the Eastern District of New York and elsewhere, the defendant SHIMON METZ, together with others, during and in relation to the crime charged in Count One, did knowingly and intentionally transfer, possess and use, without lawful authority, means of identification of another person, to wit: John Doe #1, an individual whose identity is known to the Grand Jury, knowing that the means of identification belonged to another person.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.)

9

## COUNT FIVE
### (Aggravated Identity Theft)

26.   The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

27.   On or about June 12, 2011, within the Eastern District of New York and elsewhere, the defendant MARK SAMUEL, together with others, during and in relation to the crime charged in Count One, did knowingly and intentionally transfer, possess and use, without lawful authority, means of identification of another person, to wit: John Doe #2, an individual whose identity is known to the Grand Jury, knowing that the means of identification belonged to another person.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.)

## COUNT SIX
### (Money Laundering)

28.   The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

29.   In or about and between January 2006 and March 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MELVIN CWIBEKER, also known as "Mel Cwibeker," together with others, did knowingly and intentionally conduct financial transactions

10

affecting interstate commerce, to wit: wire transfer payments, which transactions in fact involved the proceeds of specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 2 and 3551 et seq.)

COUNTS SEVEN THROUGH NINE
(Engaging in Unlawful Monetary Transactions)

30. The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

31. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant MELVIN CWIBEKER, also known as "Mel Cwibeker," together with others, did knowingly and intentionally engage and attempt to engage in monetary transactions in and affecting interstate commerce, to wit: wire transfer payments, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Section 1347, as set forth below:

11

| COUNT | APPROXIMATE DATE | FINANCIAL TRANSACTION |
|-------|------------------|----------------------|
| 7 | January 14, 2011 | $30,000 wire transfer payment from Bank of America bank account in Lawrence, New York to Bank of America Visa credit card in Lawrence, New York |
| 8 | September 15, 2011 | $25,000 wire transfer payment from Bank of America bank account in Lawrence, New York to Bank of America checking account in Lawrence, New York |
| 9 | November 1, 2011 | $75,000 check payment from Bank of America bank account in Lawrence, New York to Merrill Lynch Wealth Management Mortgage Service Center, located in Mount Laurel, New Jersey |

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

COUNT TEN
(Obstruction of a Federal Audit)

32.  The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

33.  In or about and between October 2010 and June 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MELVIN CWIBEKER, also known as "Mel Cwibeker," together with others, with intent to deceive and defraud the United States, endeavored to influence, obstruct and impede CMS, a Federal auditor in the performance of official duties relating to CWIBEKER, a person receiving in excess of $100,000, directly and indirectly, from

12

the United States in a one year period pursuant to a contract, subcontract and grant, to wit: Medicare.

(Title 18, United States Code, Sections 1516, 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE AND TEN

34. The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts One or Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offenses to forfeit any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses, including, but not limited to:

a.    the real property and premises located at 761 Central Avenue, Woodmere, New York 11598; and

b.    the real property and premises located at 1 Laura Place, Spring Valley, New York 10977.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

13

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1))

## CRIMINAL FORFEITURE ALLEGATIONS AS TO COUNTS SIX THROUGH NINE

36. The United States hereby gives notice to the defendant charged in Counts Six through Nine that, upon his conviction of any such offenses, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in each offense of conviction in violation of Title 18, United States Code, Sections 1956 or 1957, or conspiracy to commit such offenses, and all property traceable to such property, including but not limited to:

a. the real property and premises located at 761 Central Avenue, Woodmere, New York 11598; and

14

b. the real property and premises located at 1
Laura Place, Spring Valley, New York 10977.

37.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due
diligence;

b.   has been transferred or sold to, or deposited
with, a third party;

c.   has been placed beyond the jurisdiction of
the Court;

d.   has been substantially diminished in value;
or

e.   has been commingled with other property,
which cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 18,
United States Code, Section 982(b)(1), to seek forfeiture of any

15

other property of the defendant, up to the value of the

forfeitable property described in this forfeiture allegation.

        (Title 18, United States Code, Sections 982(a)(1) and

982(b)(1); Title 21, United States Code, Section 853(p))


                              A TRUE BILL


                              FOREPERSON


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


BY:
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

16

FORM DBD-34

JUN 85

No. #2010R01022

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

vs.

MELVIN CWIBEKER,
also known as "Mel Cwibeker,"
RICHARD HURWITZ,
SHIMON METZ and
MARK SAMUEL,

Defendants.

## INDICTMENT

T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(a)(7), 982(b)(1), 1028A(a)(1), 1028A(b), 1028A(c)(5), 1349, 1516, 1956(a)(1)(A)(I), 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p).

_A true bill._

_Coulins Jombers G._

_____
Foreman

Filed in open court this _____

of _____ A.D. 19 _____ day.

_____
Clerk

Bail, $ _____

THOMAS M. SULLIVAN, (631) 715-7865